James M. Green Bar No. 032211
Quarraacy L. Smith Bar No. 033515
Smith & Green Attorneys at Law P.L.L.C.
3101 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602)-812-4600
qsmith@smithgreenlaw.com
jgreen@smithgreenlaw.com
*Attorneys for Plaintiff Joey Martinez*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Joey Martinez<br>　　　　　Plaintiff,<br><br>　v.<br><br>Yavapai County, Arizona; Scott Mascher, in his official capacity as Sheriff of Yavapai County, Arizona; Pinal County, Arizona; Mark Lamb, in his official capacity as Sherriff of Pinal County, Arizona; John Doe(s) I-XV; Jane Doe(s) I-XV;<br><br>　　　　　Defendants. | Case No:<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiff, JOEY MARTINEZ ("Plaintiff"), by and through undersigned counsel, brings this action against Yavapai County, Arizona ("Yavapai"); Scott Mascher ("Mascher"); Pinal County, Arizona ("Pinal"); Mark Lamb ("Lamb"); and John and Jane Does for bodily injuries Plaintiff sustained while in custody.

The allegations in this complaint indicate serious and prevalent problems in Arizona's correctional facilities, which failed to provide adequate medical treatment to incarcerated individuals. These individuals have limited choices in selecting a healthcare provider or exercising healthcare decisions. Rather, incarcerated individuals are forced to accept the care provided by the counties and states, leaving inmates to grieve to a skeptical and unsympathetic audience.

Inadequate treatment of inmates is a consequence of overarching policies and procedures that limit resources and staff to treat serious medical conditions. In 2018, the U.S. District of Arizona found the state's Department of Corrections in contempt for failing to adhere to stipulated measures that ensure adequate healthcare is provided to incarcerated individuals throughout Arizona prisons.[1] The contempt order was upheld by the Ninth Circuit Court of Appeals.[2]

Plaintiff brings this claim because the improper treatment of inmates in Arizona prisons was also prevalent in county jails. Plaintiff hereby states and alleges as follows:

**JURISDICTION, PARTIES AND VENUE**

1. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

---

[1] *See Parsons et al. v. Ryan, et al.*, 949 F.3d 443 (9th Cir. 2020); *see also* Jimmy Jenkins, *Federal Judge Fines Arizona 1.4 Million in Prison Health Case*, KJZZ 91.5 (Jun. 22, 2018), https://kjzz.org/content/661544/federal-judge-fines-arizona-14-million-prison-health-case; Lauren Castle, *Arizona is Failing at Providing Healthcare to Inmates, It Could Cost Taxpayers Millions*, AZCENTRAL (May 6, 2019), https://www.azcentral.com/story/news/local/arizona/2019/05/06/arizona-failing-providing-adequate-healthcare-inmates-federal-court-ruling/1119832001/.

[2] *See Parsons et al.,* 949 F.3d 443; Maria Dinzeo, *Ninth Circuit Upholds Contempt Order Over Arizona's Shoddy Prisoner Care*, Courthouse News Service (Jan. 29, 2020), https://www.courthousenews.com/ninth-circuit-upholds-contempt-order-over-arizona-prisoner-care/.

2. Jurisdiction is proper pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367(a).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b).

4. Plaintiff was, at all times material hereto, resided in Pinal County, Arizona

5. Defendant Yavapai is a municipal corporation formed under the laws of the State of Arizona.

6. Defendant Mascher is a Sheriff of Yavapai County. Mascher is employed by and is an agent of Yavapai County and the Yavapai County Sheriff's Department. As the Sheriff, he is the final decision-maker for Yavapai County's jail operations, practices, and policies, including but not limited to providing medical care for inmates.

7. Defendant Pinal is a municipal corporation formed under the laws of the State of Arizona.

8. Defendant Lamb is a Sheriff of Pinal County. Lamb is employed by and is an agent of Pinal County and the Pinal County Sheriff's Department. As the Sheriff, he is the final decision-maker for Yavapai County's jail operations, practices, and policies, including but not limited to providing medical care for inmates.

9. The true names of John Does 1-V and Jane Does I-V are unknown at this time and Plaintiff reserves the right to amend this complaint when the names of these fictitious defendants becomes known, but each of these defendants is believed to be an employee of either Pinal or Yavapai County Jail.

10. Upon information and belief, all the incidents alleged herein occurred within the

State of Arizona, at the counties of Yavapai and Pinal.

**GENERAL ALLEGATIONS**

11. On or about the afternoon of July 17, 2019, Plaintiff was arrested for an alleged probation violation by an officer from the Yavapai County Sheriff's office.

12. Upon his arrest, Plaintiff was put face down on the ground with the officer's knees on his back, while Plaintiff's keys were under his chest.

13. Plaintiff complained of being unable to breath and requested an ambulance.

14. Ambulance services arrived at the scene due to chest pains and shortness of breath.

15. Plaintiff was taken to Yavapai Regional Medical Center where he received pain medication that made him feel drowsy and sleepy.

16. Upon information and belief, Plaintiff fell asleep while still at the hospital due to the pain medication.

17. Plaintiff woke up in Yavapai County jail handcuffed to a bed.

18. Not realizing he was handcuffed, Plaintiff got off the bed, and injured his left arm.

19. Plaintiff was taken to the infirmary where a sling was put on his left arm.

20. Plaintiff believed his left arm was broken and complained of excessive pain.

21. Approximately one week later, due to Plaintiff's complaints of excessive pain, an X-ray technician examined Plaintiff's left arm in Yavapai County Jail.

22. The X-ray technician referred Plaintiff to an orthopedic surgeon.

23. Plaintiff, believing his left arm was broken, requested to be taken to a hospital several times while in Yavapai County Jail.

24. Yavapai correctional officers refused to comply with Plaintiff's requests to go to the hospital

25. On July 22, 2020, Plaintiff was subsequently transferred to Pinal County jail wherein he was placed in a large holding cell to be processed.

26. Immediately prior to being transferred from the large holding cell, officers told Plaintiff to clean up his trash.

27. As Plaintiff was throwing his trash out, a correction officer slammed a large door onto Plaintiff, further injuring Plaintiff's left arm and causing Plaintiff to lose consciousness due to the severity of the pain. This event occurred on July 22, 2020 while Plaintiff was in the transfer process.

28. After this incident, Plaintiff asked Pinal County jail officials for medical assistance, but was not provided any medical treatment. Plaintiff's arm remained untreated in Pinal County jail.

29. The following day, Plaintiff was moved to a maximum-security pod called "F-Unit 400."

30. Plaintiff's transfer to a maximum-security pod was unusually unreasonable because Plaintiff had been arrested for a first-time, minor probation violation.

31. Over the course of the next two weeks, Plaintiff repeatedly asked Pinal County Jail officials to be seen by a doctor or be taken to the emergency room due to the immense pain in his arm, but Plaintiff's pleas were ignored.

32. Eventually, Plaintiff's arm was examined by an X-ray technician at Pinal County Jail, who declared that Plaintiff's injury was extremely serious and should have already been treated through a surgical procedure.

33. Upon information and belief, the X-ray technician referred Plaintiff for an emergency surgery with a trauma surgeon. The X-ray technician believed the procedure needed to be completed immediately to avoid future complications.

34. Plaintiff was then taken to the infirmary by a corrections officer ("CO").

35. Upon arriving at the infirmary, the CO handed a medical staff member the referral from the X-Ray technician.

36. The medical staff member informed the CO that the emergency procedure would be very costly, placed the referral on her desk, and proceeded to take Plaintiff's blood pressure and other vital signs.

37. Plaintiff offered to use his personal private insurance to cover the cost of the surgery but did not receive a response from the medical staff.

38. Despite the recommended surgery, Plaintiff was taken back to his maximum-security unit, where he spent the next several weeks in extreme pain. During this time, Plaintiff repeatedly asked to be taken to a hospital.

39. While in Pinal County Jail, Plaintiff suffered so much pain that he could not shower, or change his uniform because he could not lift his arm high enough to remove the uniform. Plaintiff never received any assistance from jail personnel.

40. Plaintiff was subsequently moved from F-Unit to G-Unit, but still had not received the appropriate and/or necessary medical attention for his arm injury.

41. Plaintiff was released on August 23, 2019 after spending thirty-seven days in custody with a broken arm.

42. Upon his release, Plaintiff immediately went to the emergency room where he was diagnosed with a fractured elbow and was referred to an Orthopedic trauma surgeon for emergency surgery.

## COUNT I
## 42 U.S.C. § 1983- 8th AMENDMENT

43. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

44. 42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

45. Plaintiff suffered a broken arm while in the custody of Yavapai County Jail.

46. Yavapai County gave Plaintiff a sling for his arm, referred Plaintiff to an orthopedic surgeon, and then deprived Plaintiff of treatment until he was transferred to Pinal County jail.

47. At Pinal County jail, Plaintiff's injury was further exacerbated when a CO intentionally slammed a large metal door onto Plaintiff's arm.

48. While in the care and custody of Pinal County, Plaintiff was taken to the infirmary where his broken arm was confirmed, but no surgery was scheduled.

49. While in the care and custody of Pinal County, Plaintiff made multiple requests for assistance and pleas for help to address his broken arm, which were ignored.

50. Plaintiff was in excruciating pain for thirty-seven days and is now left with a permanently deformed arm which will cause him pain for the rest of his life.

51. Both Yavapai and Pinal failed in their obligation to provide adequate medical care for Plaintiff while he was in their care and custody.

52. Both Yavapai and Pinal exercised deliberate indifference towards Plaintiff's medical needs while he was in their custody.

53. Both Yavapai and Pinal intentionally delayed Plaintiff's treatment or access to treatment while Plaintiff was in their care and custody.

54. Yavapai and Pinal's jail policies are determined by their respective sheriffs. Thus, defendants Mascher and Lamb are responsible for their counties' constitutional violations.

55. Accordingly, all defendants have violated Plaintiff's 8th Amendment right, subjecting him to cruel and unusual punishment, and providing him a claim under 42 U.S.C. § 1983,

## COUNT II
## GROSS NEGLIGENCE
**(Yavapai County)**

56. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

57. A party is grossly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an

unreasonable risk of bodily harm to others, but also involves a high probability that substantial harm will result.

58. Plaintiff fractured his arm while in the care custody and control of Yavapai.

59. Yavapai failed to ensure Claimant was provided with sufficient medical care to prevent him from suffering further pain or aggravating his injury.

60. Yavapai should have reasonably foreseen that its failure to act would result in Plaintiff suffering substantial harm, pain and suffering.

61. As a direct and proximate result of Yavapai's actions, Plaintiff suffered damages.

62. Accordingly, Plaintiff seeks actual, consequential, compensatory and punitive damages. Plaintiff also seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## COUNTY III
## GROSS NEGLIGENCE
### (Pinal County)

63. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

64. Upon taking custody of Plaintiff, a CO in the employee of Pinal further aggravated Plaintiff's injury by slamming his arm in a large metal door.

65. Pinal subsequently examined Plaintiff and became aware of Plaintiff's significant injury.

66. Rather than providing care, Pinal transferred Plaintiff to a maximum-security cell where Plaintiff was left without care or treatment for his injury.

67. Pinal should have reasonably foreseen that as a result of its failure to treat Plaintiff's injury, Plaintiff would suffer substantial harm and continued pain and suffering.

68. As a direct and proximate result of Pinal's actions, Plaintiff suffered damages.

69. Plaintiff seeks actual, consequential, compensatory and punitive damages. Plaintiff also seeks an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT IV
## NEGLIGENCE
### (Yavapai and Pinal County)

70. Plaintiff incorporates by reference all previous allegations as though fully set forth herein

71. Both Yavapai and Pinal each had a duty to exercise reasonable care while Plaintiff was in their care and custody as a prisoner.

72. Both Yavapai and Pinal were required to provide medical care to Plaintiff while he was in their custody.

73. Yavapai breached its duty of care after it performed an X-Ray on Plaintiff, and thereafter failed to provide the adequate and necessary medical care for Plaintiff's injured arm.

74. Pinal breached its duty of care when it became aware of Plaintiff's broken arm and failed to provide the adequate and necessary medical care required.

75. Pinal further breached its duty when Plaintiff's repeated requests for medical care went unheeded, and Plaintiff remained in his cell, unclean and in pain, as he was unable to change or shower due to his broken arm.

76. Both Yavapai and Pinal's conduct directly and proximately caused Plaintiff to suffer injuries and other damages.

77. Accordingly, both Yavapai and Pinal are liable for negligence.

## COUNT V
## BATTERY
### (Yavapai County)

78. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

79. In Arizona, a battery is committed when a defendant intentionally caused a harmful or offensive contact with the plaintiff.

80. Proof of damages is unnecessary to establish this claim.

81. Yavapai committed battery when its officers slammed Plaintiff on the ground on top of his keys, which then necessitated medical attention.

82. Plaintiff was being arrested for a non-violent probation violation, and was not resisting arrest at the time of his arrest, thus Yavapai's officers exceeded the scope of their duty by slamming Plaintiff on the ground, committing battery.

83. As a direct and proximate result of Yavapai's battery Plaintiff suffered damages.

## COUNT VI
## BATTERY
### (Pinal County)

84. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

85. Pinal committed battery when its CO slammed a large metal door on Plaintiff's arm as he was being moved from the holding cell.

86. The CO committed harmful contact with Plaintiff, and was acting beyond the scope of his duty, as Plaintiff was walking freely and obeying instructions when the CO committed the contact.

87. Accordingly, Pinal County committed battery.

## COUNT VII
## INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS
### (Yavapai County)

88. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

89. To prevail on a claim for intentional infliction of emotional distress (IIED) a plaintiff must show: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the certainty that the claimant would suffer emotional distress; and (3) the claimant suffered emotional distress.

90. Here, Yavapai engaged in extreme and outrageous conduct when it became aware that Plaintiff's arm was broken but did not send him to the hospital to have it set and mended.

91. Plaintiff was in the care and custody of Yavapai for over a week before Yavapai transferred Plaintiff to another facility in Pinal County.

92. For the duration of Plaintiff's stay at Yavapai County jail, Yavapai recklessly disregarded the certainty that Plaintiff would suffer emotional distress as a result of the pain and suffering he was incurring from his untreated arm.

93. As a direct and proximate result of Yavapai's actions Plaintiff did suffer emotional distress and incur damages.

94. Accordingly, Yavapai is liable for IIED.

## COUNT VIII
## INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS
### (Pinal County)

95. Plaintiff incorporates by reference all previous allegations as though fully set forth herein.

96. Upon taking custody of Plaintiff, Pinal was made aware that Plaintiff was suffering from a broken arm.

97. Nevertheless, a CO in the employee of Pinal engaged in extreme and outrageous conduct when he intentionally slammed a large metal door on Plaintiff's arm further exacerbating Plaintiff's injury.

98. Pinal further engaged in extreme and outrageous conduct when it failed to provide Plaintiff with the necessary medical care for his arm despite Plaintiff's repeated desperate pleas for medical care, and allowed him to remain in his cell without a shower and in the same uniform.

99. This continued for several weeks until Plaintiff's eventual release.

100. Pinal's intentional actions recklessly disregarded the certainty that Claimant would suffer emotional distress and Claimant did suffer emotional distress.

101. Accordingly, Pinal is liable for IIED.

**WHEREFORE,** Plaintiff, requests a judgment be entered in her favor against the Defendants as follows:

1. For general damages in an amount to be proven at trial;
2. For punitive damages in an amount to be determined at trial;
3. For an amount to compensate Plaintiff, for pain and suffering;
4. For Plaintiff's medical bills past and future;
5. For such other relief, the Court deems just and equitable under the circumstances.

DATED this 16th day of July 2020.

Smith and Green, Attorneys at Law, P.L.L.C.

By   */s/ James M. Green*
　　　James Green, Esq.
　　　Attorney for Plaintiff

# VERIFICATION

STATE OF ARIZONA )
) ss.
County of Maricopa )

JOEY MARTINEZ, being first duly sworn, upon his oath deposes and says:

I have read my Civil Complaint against Yavapai County and Pinal County, and I know the contents to be true to the best of my knowledge, except those matters stated upon information and belief, and as to those matters, I believe them to be true.

_____
JOEY MARTINEZ

SUBSCRIBED AND SWORN to before me this \_\_\_day of June 2020 BY JOEY MARTINEZ.

_____
Notary Public